IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH PIERRE ROLLIN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CHRISTINE COOK, *et al.*,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　/ | No. C 09-3579 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR COSTS AND ATTORNEYS' FEES; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS BY DEFENDANTS COOK ET AL.; GRANTING HENDERSON DEFENDANTS' MOTION TO DISMISS; AND GRANTING PLAINTIFF LIMITED LEAVE TO AMEND** |

Various motions were scheduled for a hearing on December 15, 2009. Pursuant to Civil Local Rule 7-1(b), the Court determined that the matters are appropriate for resolution without oral argument, and vacated the hearing and the case management conference scheduled for that day. As set forth below, the Court GRANTS defendants' motions to dismiss all claims, with the exception that the Court finds that plaintiff has stated the first cause of action against defendant Cook. The Court GRANTS plaintiff leave to amend the fourth cause of action. The second, third and fifth causes of action are DISMISSED WITHOUT LEAVE TO AMEND. If plaintiff wishes to amend the fourth cause of action, he must do so no later than **January 8, 2010**. Once an operative complaint has been sustained, the Court will schedule an initial case management conference.

# BACKGROUND[1]

On August 5, 2009, plaintiff Joseph Pierre Rollin filed a complaint for damages for violation of his constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff's claims arise out of his arrest and prosecution for abuse of a dependent adult. The complaint alleges that at various times from 1994 - 2002, plaintiff was the caregiver for Joi Henderson Wright, a woman diagnosed with multiple sclerosis ("MS"). Compl. ¶¶ 14-16. Plaintiff also lived with Wright in a mobile home in Orick, California. *Id*. ¶ 17. According to the complaint, defendant Michael Finamore, a public health nurse employed by the Humboldt County Adult Services, visited Wright in August or September 2000 and found that Wright suffered from advanced MS, that she was bedridden, had bed sores, and needed full time care. *Id*. ¶ 18. The complaint alleges that "[b]ecause Plaintiff was not medically trained and Wright needed more medical services than he could provide, Plaintiff requested of Finamore that the Humboldt County Adult Protective Services (hereinafter 'APS') take over and supervise Wright's care." *Id*. ¶ 19. Defendant Finamore arranged for Wright to receive county health services from APS and then arranged for the county to contract with plaintiff as Wright's designated caregiver for certain designated times. *Id*. ¶ 20. The complaint alleges that the balance of the time there was no designated caregiver and "Plaintiff did the best he could under the extenuating circumstances." *Id*.

In November 2000, plaintiff informed Finamore that he could no longer care for Wright and that Finamore should find another caregiver. *Id*. ¶ 21. Finamore arranged for Wright to be moved to Eureka, California, and to receive in-house support services from the county. *Id*. In March 2001, Wright insisted and demanded that she be moved back to Orick and that plaintiff be reinstated as her caregiver. *Id*. ¶ 22. Despite objections from Finamore, plaintiff, and Wright's doctors, Wright was moved back to the mobile home in Orick and plaintiff was again contracted to be her caregiver. *Id*. ¶ 23. The complaint alleges that "Wright was given what she wanted and demanded." *Id*. In October 2001, APS terminated all services to Wright based on the recommendation of Finamore. *Id*. ¶ 24. According to

---

[1] The factual background is based on the complaint. Defendants seek judicial notice of numerous documents related to the criminal prosecution of plaintiff. The Court GRANTS these requests. The Court is aware that defendants dispute plaintiff's factual allegations. For purposes of the instant motions, however, the Court must take as true the allegations of the complaint. However, the Court considers the materials from plaintiff's criminal case to the extent they are relevant to the determination of the accrual of plaintiff's claims.

2

the complaint, Finamore's recommendation was based on his observations that Wright refused medical services, refused prescription drugs, and refused to be moved into a medical care facility. *Id*.

The complaint alleges that in January 2002 and February 2002, Wright's mother, defendant Betty Henderson, called the Humboldt County Deputy Sheriff Berry requesting that Berry check on Wright's welfare. *Id*. ¶¶ 27-28. According to the complaint, Sheriff Berry visited Wright in January and February of 2002, and both times found that Wright was adequately cared for in light of her advanced MS. *Id*.

The complaint alleges that on or about March 14, 2002, plaintiff and Wright decided to relocate to San Diego, California because of threats on plaintiff's life. *Id*. ¶ 30. Plaintiff began packing their belongings, and placed the bulk of their property in a local storage unit. *Id*. On or about March 18, 2002, plaintiff traveled to San Diego. *Id*. ¶ 31. Plaintiff left his brother, Andre Rollin, to care for Wright. *Id*. According to the complaint, Wright died in her sleep sometime in the late afternoon or early evening of March 19, 2002. *Id*. ¶ 32. In the early hours of March 20, 2002, Andre Rollin brought Wright's body to the Mad River Community Hospital where Wright was declared dead on arrival. *Id*. ¶ 33. The death certificate stated that the cause of death was "Lobar Pneumonia, contaminated pressure sores, bedridden and MS." *Id*. ¶ 34. The death certificate also noted that Wright had a urinary tract infection and advanced malnutrition. *Id*.

After Wright's death, defendant Christine Cook, an investigator for the Humboldt County District Attorney, requested a search warrant to search the mobile home where Wright and plaintiff lived, as well as the storage unit. *Id*. ¶ 35. The complaint alleges that "[b]ased on the false information in the affidavit, the search warrant was issued by the magistrate." *Id*. ¶ 35. The complaint alleges that on or about March 21, 2002, defendant Chester Jarboe, of the Humboldt County Sheriff's Department, searched the storage unit and seized evidence outside the scope of the search warrant. *Id*. ¶ 37. On or about March 25, 2002, defendants Jarboe, Cook and Horton (the Humboldt County Coroner) returned to the storage unit with Wright's parents, defendants Betty and Kenneth Henderson. *Id*. ¶ 38. The complaint alleges that defendants did not obtain a search warrant for the March 25, 2002 search, and that defendants Jarboe, Cook and Horton "aided and permitted Betty Henderson and Kenneth Henderson to remove over $30,000.00 of Plaintiff's personal property from the storage unit for Henderson's [sic]

3

own use." *Id.* ¶ 39.

Sometime shortly after Wright's death, plaintiff relocated to Texas. *Id.* ¶ 40. Over a year later, plaintiff was contacted by defendant Cook, who was investigating Wright's death for the Humboldt County Sheriff's Department and/or the Humboldt County District Attorney's Office. *Id.* ¶ 41. On or about April 8, 2003, Cook arranged for Texas law enforcement officers to arrest plaintiff and take him into custody. *Id.* ¶ 42. Cook interrogated plaintiff for approximately one half hour as to the circumstances of Wright's death without advising him of his Fifth Amendment rights. *Id.* After Cook concluded the initial interrogation, and plaintiff gave his initial statements, Cook left the room. *Id.* ¶ 43. Cook subsequently returned, took plaintiff into a different room that was "wired," and advised plaintiff of his Fifth Amendment rights. *Id.* The complaint alleges that Cook then reinstituted a lengthy six-plus hour coercive interrogation during which plaintiff answered Cook's questions; some of plaintiff's answers differed from his previous answers. *Id.*

Plaintiff was charged and ultimately convicted of abuse of an elder or dependent adult in violation of California Penal Code Section 368(b)(1). The complaint alleges that at the preliminary hearing and at trial, Cook testified that plaintiff's answers that were given before the *Miranda* warning were actually given after the *Miranda* warning. Compl. ¶ 44. Plaintiff appealed his conviction, and on December 13, 2006, the California Court of Appeal reversed plaintiff's conviction and held that "a statement obtained in violation of the rule announced in *Miranda v. Arizona* (1966) 384 U.S. 436 was admitted at trial as evidence of his guilt, and the error was not harmless beyond a reasonable doubt." Docket No. 38, Ex. I at 1. Upon a retrial of plaintiff, a jury found plaintiff not guilty of any charges. Compl. ¶ 47. Plaintiff was in custody continuously from April 8, 2003 until January 15, 2008. *Id.* ¶ 47.

Plaintiff's complaint alleges five claims under 42 U.S.C. § 1983: (1) Fifth Amendment violation against defendant Cook; (2) Fourth Amendment violation (false arrest) against defendant Cook; (3) Fourth Amendment violation (preparation of false search warrant affidavit) against defendant Cook; (4) conspiracy to violate Fourth, Fifth and Fourteenth Amendment rights against defendants Cook, Jarboe, Finamore and Horton; and (5) conspiracy to violate Fourth, Fifth, and Fourteenth Amendment rights (seizure of plaintiff's property in excess of the directives in the search warrant) against all defendants. All defendants have moved to dismiss the complaint, and plaintiff has moved for attorneys' fees and

costs related to serving the Hendersons.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). While courts do not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I. Plaintiff's motion for attorneys' fees and costs

Plaintiff seeks costs incurred to serve the Hendersons after they allegedly refused to waive service of summons, as well as related attorneys' fees. Plaintiff seeks $100.00 for the cost of hiring a

1 process server, $13.32 for a certified mailing attempt to serve the Hendersons, and $3,750.00 in
2 attorneys' fees incurred in preparing the motion for attorneys' fees.

In response, the Henderson's counsel has submitted a declaration contesting plaintiff's version of events, and stating, *inter alia*, that her elderly clients were likely confused by the complaint and service forms that they received because the waiver of service of summons included the name of a different defendant, Christine Cook, and did not include their names. Counsel also states that defendants have already paid plaintiff for the cost of the process server and certified mail, and they argue that an award of attorneys' fees is not warranted under the circumstances here.

The Court agrees with defendants that this motion was wholly unnecessary, and it is DENIED. Based upon the record before the Court, it appears that plaintiff's counsel could have taken numerous additional steps, such as further communication with defense counsel, prior to hiring a process server. At a minimum, once defendants paid the service costs this motion should have been withdrawn. There was no reason to file the instant motion, and the Court finds that the fees incurred in bringing this motion are unreasonable.

## II. Defendants Cook, Finamore, Jarboe & Horton's motion to dismiss

### A. First cause of action

Plaintiff's first cause of action alleges that defendant Cook violated plaintiff's Fifth Amendment rights when Cook "failed to advise Plaintiff of his Fifth Amendment rights during the interrogation in Texas and subsequently used that information to substantiate her testimony at the first trial." Compl. ¶ 50.

Defendant Cook moves to dismiss this claim on several grounds. First, Cook contends that the independent decisions by both the prosecutor in offering the evidence, and the trial judge in allowing the evidence, broke the chain of causation between Cook's conduct and the ultimate violation of plaintiff's Fifth Amendment rights. *See Wray v. City of New York*, 490 F.3d 189, 192-93 (2d Cir. 2007). The Ninth Circuit recently addressed this issue in *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009). In *Stoot*, the Ninth Circuit held that "absent unusual circumstances, a police officer eliciting incriminating statements from a criminal suspect 'could reasonably have foreseen that a coerced

6

confession would be used against [the suspect] and would lead to [the suspect's] detention.'" *Id*. at 926 (quoting *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007)). "Given that reasonable inference, the prosecutor's decision to use the allegedly coerced statements in the affidavit and at arraignment did not serve, as a matter of law, as an intervening or superseding cause that cut off Jensen's liability." *Stoot*, 582 F.3d at 926.

Cook argues that *Stoot* is factually distinguishable because *Stoot* only involved the use of coerced statements at pretrial proceedings, and not at trial. Cook argues that a trial involves an increased level of scrutiny by both the prosecutor and the trial court in determining the admissibility of an alleged unlawfully obtained statement, and that this heightened scrutiny breaks the chain of causation. While Cook's arguments have some persuasive force, the Court does not read *Stoot* as limited only to pretrial uses of statements. The Court declines to hold that the use of an allegedly coerced statement at trial is, as a matter of law, an intervening cause that precludes liability. Defendant may renew the causation arguments on a fuller factual record in a motion for summary judgment.

Cook also argues that she is entitled to qualified immunity. Cook may be entitled to qualified immunity if her conduct " '[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted. *Id*. at 818. A ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity is particularly amenable to summary judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

Cook argues that she is entitled to qualified immunity because she did not question plaintiff prior to giving him the *Miranda* warning, but simply recorded his statements. Plaintiff alleges, however, that Cook interrogated him prior to giving him a *Miranda* warning. These types of factual disputes are inappropriate for resolution on a motion to dismiss, and defendant may renew the qualified immunity

7

argument on a fuller factual record at summary judgment.

Accordingly, the Court DENIES defendants' motion to dismiss the first cause of action.

### B. Second cause of action

Plaintiff's second claim is for false arrest against defendant Cook. The parties agree that the false arrest claim accrued at the latest on May 19, 2003, the date plaintiff was arraigned and bound over for trial. *See Wallace v. Kato*, 549 U.S. 384, 391-92 (2007). Cook moves to dismiss this claim as untimely.

Section 1983 does not contain its own limitations period. The appropriate period is that of the forum state's statute of limitations for personal injury torts. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994). In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at California Civil Procedure Code § 335.1 and is the applicable statute in § 1983 actions. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *see also Silva*, 169 F.3d at 610 (limitations period for filing § 1983 action in California governed by residual limitations period for personal injury actions in California, which was then one year and was codified in Cal. Civ. Proc. Code § 340(3)); Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period, which is now two years; enacted in 2002).[2] Thus, absent any tolling, the limitations period on this claim expired on May 19, 2005, well before this lawsuit was filed.

Plaintiff contends that the statute of limitations was tolled under California Government Code Section 945.3 and California Code of Civil Procedure Section 352. A federal court must give effect to a state's tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989). Government Code Section 945.3 tolls the limitations period on § 1983 claims during the time criminal charges are pending, *Torres v. City of Santa Ana*, 108 F.3d 224, 226 (9th Cir. 1997), and Civil Procedure Code Section 352 tolls the limitations period during imprisonment. *Fink v. Shedler*, 192 F.3d 911, 913-14 (9th Cir. 1999).

---

[2] The 2002 extension of the applicable California limitations period became effective January 1, 2003. *Maldonado*, 370 F.3d at 955. Under California law, an extension of a statute of limitations does not apply to claims already barred under the old statute, unless the legislature provides otherwise. *Id.*

8

The statute of limitations begins to run immediately after the recognized disability period ends. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 378-79 (9th Cir. 1998) (applying California law).

The first of the two tolling provisions, Section 945.3 of the California Government Code, provides,

> No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based on conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.
>
> Any applicable statute of limitations for filing and prosecuting these actions shall be tolled during the period that the charges are pending before a superior court.
>
> For the purposes of this section, charges pending before a superior court do not include appeals . . .

Cal. Gov't Code § 945.3. Although the first portion of Section 945.3, which prohibits a criminal defendant from bringing a civil action in court while state criminal charges are pending, does not apply in federal civil rights actions, the second portion allowing for tolling does apply. *See Torres*, 108 F.3d at 226. The tolling provision operates only while criminal charges are "pending." "Under this section, criminal charges are 'pending' until the date of judgment." *Torres*, 108 F.3d at 226 (quoting *McAlpine v. Superior Court*, 209 Cal. App. 3d 1, 3 (1989)).

Here, the limitations period was tolled under Section 945.3 from May 19, 2003, the date of plaintiff's arraignment, until October 4, 2004, the date of plaintiff's sentencing. Relying on *Carey v. Saffold*, 536 U.S. 214 (2002), plaintiff asserts that he is also entitled to tolling under Section 945.3 during the time of his appeal. However, *Carey* interpreted the meaning of "pending" as used in 28 U.S.C. § 2244(d)(1)(A) with respect to California's system of collateral habeas review, and did not address or interpret tolling under Section 945.3. Moreover, the plain language of Section 945.3 provides "[f]or the purposes of this section, charges pending before a superior court do not include appeals . . ." Thus, the limitations period was not tolled under Section 945.3 during the time of the appeal.[3]

Plaintiff is also entitled to tolling under Code of Civil Procedure 352.1 during part of the time

---

[3] As addressed *infra*, plaintiff is entitled to additional tolling under Section 945.3 during the period of the retrial.

he was incarcerated. Section 352.1 provides,

> (a) If a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.
>
> (b) This section does not apply to an action against a public entity or public employee upon a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) or Chapter 2 (commencing with Section 910) of Part 3, or Chapter 3 (commencing with Section 950) of Part 4, of Division 3.6 of Title 1 of the Government Code. This subdivision shall not apply to any claim presented to a public entity prior to January 1, 1971.
>
> (c) This section does not apply to an action, other than an action to recover damages or that portion of an action that is for the recovery of damages, relating to the conditions of confinement, including an action brought by that person pursuant to Section 1983 of Title 42 of the United States Code.

Cal. Code Civ. Proc. § 352.1(a)-(c). Plaintiff's claim was tolled under Section 352.1(a) from May 19, 2003, the date of plaintiff's arraignment, until May 19, 2005. Plaintiff argues that the entire period of his incarceration should be tolled under Section 352.1, and thus that the limitations period should be tolled through January 15, 2008 when he was released from custody. Plaintiff argues that the Court should apply the pre-1995 version of Section 352, which provided for unlimited tolling during incarceration if the term was less than life. According to plaintiff, the Court should apply unlimited tolling, notwithstanding the 1995 revision to Section 352.1, because current subsections (b) and (c) do not limit tolling for claims against a public agency or an employee of a public entity.

Plaintiff's argument lacks merit and demonstrates a misunderstanding of Section 352.1. For prisoners incarcerated for a term less than life, Section 352.1(a) limits tolling to no more than two years during incarceration. Subsections (b) and (c), upon which plaintiff relies, provide that there is no tolling at all for prisoners who bring claims against public entities for which claim presentation is required under the Government Tort Claims Act, or claims for relief other than claims for damages based on conditions of confinement. *See* Cal. Code Civ. Proc. § 352.1(b)-(c); *see also Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999) ("Subsection (b) provides that there is no tolling of claims presentation requirements for state-law tort claims against public entities or employees, and subsection (c) limits tolling for suits challenging "conditions of confinement" to claims for monetary damages."); *Fink*, 192 F.3d at 913-14 (explaining revision to Section 352.1 and holding that amended Section 352.1

10

applies retroactively so long as a plaintiff had a reasonable time after January 1, 1995 to bring suit). Plaintiff also argues, without authority, that the statute of limitations starts anew each time his claims are tolled. This argument is also without merit. *See Cabrera*, 159 F.3d at 379-80 (in limitations analysis, computing time before and after tolling periods cumulatively and without restarting statute of limitations).

Based on the foregoing, plaintiff's claim accrued on May 19, 2003, and the limitations period was tolled under Sections 945.3 and 352.1 from May 19, 2003 until May 19, 2005. The limitations period began to run on May 20, 2005, and continued to run until December 13, 2006, when the California Court of Appeal reversed plaintiff's conviction. Beginning on December 13, 2006, the limitations period was tolled under Section 945.3 because the criminal charges were "pending" from the date of the reversal through plaintiff's retrial and acquittal on January 15, 2008. The limitations period began to run again on January 16, 2008, and expired before the filing of this lawsuit on August 5, 2009. Accordingly, the Court DISMISSES this claim without leave to amend.[4]

### C. Third cause of action

Plaintiff's third cause of action alleges a Fourth Amendment claim against defendant Cook based on her alleged preparation of a false search warrant affidavit. An injury allegedly occurring from an illegal search and seizure generally accrues when the search and seizure occurs. *See Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983), *disapproved on other grounds by Wilson*, 471 U.S. 261. The search of the storage unit occurred on March 21, 2002. Cook contends, and plaintiff does not dispute, that plaintiff's claim accrued on this date. Because the claim accrued in 2002, California's then-one year statute of limitations applies to this claim, *Maldonado*, 370 F.3d at 955, and thus it is untimely absent tolling.

---

[4] Because the Court concludes that plaintiff's second cause of action is untimely even after applying tolling under Section 945.3, the Court finds it unnecessary to address the parties' arguments about whether Section 945.3 applies to a claim against defendant Finamore.

11

The parties' arguments about tolling are similar to those discussed above.[5] Almost all of the one year limitations period had expired by the time criminal proceedings were initiated by the filing of the criminal complaint on March 19, 2003. Even assuming that all of the time between March 19, 2003 and January 18, 2008 is tolled (which it is not, as discussed above), the limitations period expired well before this lawsuit was filed. Accordingly, the Court DISMISSES this claim without leave to amend.

### D. Fourth cause of action

Plaintiff's fourth cause of action alleges that defendants Cook, Jarboe, Finamore and Horton conspired to violate plaintiff's Fourth, Fifth and Fourteenth Amendment rights. The complaint alleges that "Defendant Christine Cook conspired with Defendants Jarboe, Horton, and Finamore to prepare, draft and file affidavits and reports that they knew or should have known did not reflect Wright's health, living conditions and the intentions of Wright to determine her own future. These reports formed the basis on which the affidavit of probable cause was filed when Plaintiff was arrested." Compl. ¶ 68. The complaint alleges that "[a]s a proximate cause of the aforementioned acts and omissions of defendants, and by reason thereof, Plaintiff was arrested and forced to defend himself in a criminal action." *Id.* ¶ 69. Plaintiff seeks, *inter alia*, exemplary and punitive damages in the amount of $1,000,000.00, as well as recovery of the attorneys' fees and litigation costs he incurred in defending himself in the criminal case. *Id.* ¶¶ 70-71.

Defendants contend that as with the second claim for false arrest, this cause of action accrued on May 19, 2003, and thus is untimely for all of the same reasons as the second claim. Plaintiff contends that the claim is timely because the last overt act in the alleged conspiracy was the use of the information in the affidavits during the retrial in December 2007 and/or January 2008.

Defendants rely on *Wallace v. Kato*, 549 U.S. at 391. In *Wallace*, the Supreme Court held that the statute of limitations on a Section 1983 claim seeking damages for false arrest in violation of the Fourth Amendment, when the arrest is followed by criminal proceedings, begins to run at the time the

---

[5] Plaintiff's entire opposition to defendant's motion to dismiss the third cause of action states "For the reasons set forth above as to the Second Cause of Action, Plaintiff argues that the statute of limitations has not run on the Third Cause of Action." Opposition at 17:8-9.

12

plaintiff becomes detained pursuant to legal process. The plaintiff in *Wallace* had been arrested and convicted, and after an appellate court reversed the conviction, the criminal charges were dropped. The Supreme Court rejected the plaintiff's argument that the statute of limitations did not start running until his release from custody:

> Petitioner asserts that the date of his release from custody must be the relevant date in the circumstances of the present suit, since he is seeking damages up to that time. The theory of his complaint is that the initial Fourth Amendment violation set the wheels in motion for his subsequent conviction and detention: The unlawful arrest led to the coerced confession, which was introduced at his trial, producing his conviction and incarceration. As we have just explained, at common law damages for detention after issuance of process or arraignment would be attributable to a tort other than the unlawful arrest alleged in petitioner's complaint–and probably a tort chargeable to defendants other than the respondents here. Even assuming, however, that all damages for detention pursuant to legal process could be regarded as consequential damages attributable to the unlawful arrest, that would not alter the commencement date for the statute of limitations.

*Id*. at 391. Here, similar to the claim in *Wallace*, plaintiff is alleging that defendants violated his constitutional rights by conspiring to prepare false affidavits and reports, and that those false affidavits and reports led to his arrest and criminal prosecution. The Court is inclined to agree with defendants that under *Wallace*, plaintiff's claim accrued on May 19, 2003, and thus that the claim is time-barred.

Plaintiff asserts that the last overt act in the alleged conspiracy occurred in December 2007 or January 2008 when the allegedly false reports and affidavits were used. However, neither the complaint nor plaintiff's opposition explains how these defendants – who prepared the reports and affidavits at issue but did not prosecute plaintiff at the retrial – would be liable for the use of the reports at the retrial. The Court DISMISSES this claim WITH LEAVE TO AMEND. If plaintiff chooses to amend this claim, plaintiff shall articulate the legal and factual basis for this claim, the date of the last overt act in the alleged conspiracy, and state why this claim is timely.

### E. Fifth cause of action

Plaintiff's fifth cause of action alleges that all defendants "conspired to deprive[] Plaintiff of over $100,000.00 of his personal possessions when they permitted and aided Betty Henderson and Kenneth

1 Henderson to remove said property from Plaintiff's storage unit." Compl. ¶ 74.[6] Defendants contend
2 that the injury accrued on March 25, 2002, the date that the Hendersons removed their daughter's
3 belongings (and allegedly plaintiff's belongings) from the storage locker. Plaintiff contends that the
4 claim did not accrue until January 15, 2008, the date that he was released from prison and he discovered
5 his loss.

6 Defendants argue that plaintiff knew or should have known of the injury – an allegedly improper
7 search and seizure – at the time the search occurred. Defendants identify a number of facts in support
8 of their argument that plaintiff should have known about his alleged injury in March 2002. Defendants
9 also argue that plaintiff had actual notice that defendant Horton (the Coroner) went to the storage unit
10 with the Hendersons, and that the Hendersons removed some items from that unit. On November 24,
11 2003, a joint preliminary hearing was held in plaintiff's and his brother's criminal case. During that
12 hearing, at which plaintiff was present, the defense counsel representing plaintiff's brother questioned
13 Mr. Horton about providing the Hendersons with access to the storage unit:

14     Q.   . . . Now, are you the one who met the family at the storage unit?
15     A.   Yes.
16     Q.   And that was on the 25th; is that correct?
17     A.   I believe so.
18     Q.   About 10:00 in the morning?
19     A.   Yes.
20     Q.   And that they went through the storage unit in your presence, right?
21     A.   Yes, they did.

22 November 24, 2003 Reporter's Transcript at 118:8-18 (Docket No. 36, Ex. D). In addition, defendants
23 have requested judicial notice of a "motion for return of property" filed by plaintiff's defense attorney.
24 Supp. Request for Judicial Notice, Ex. K. The motion is dated January 20, 2005, and seeks the return
25 of all items taken by the Hendersons from the storage unit on March 25, 2002. *Id.*

26 Federal law determines when a cause of action accrues and the statute of limitations begins to

---

[6] The complaint inconsistently alleges that the Hendersons took over $30,000 or over $100,000 worth of plaintiff's belongings from the storage unit. *See* Compl. ¶¶ 39, 74.

14

run in a § 1983 action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Elliott*, 25 F.3d at 801-02. Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See TwoRivers*, 174 F.3d at 991-92; *Elliott*, 25 F.3d at 802. The statute of limitations generally begins to run only once a plaintiff has knowledge of the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). But a plaintiff must be diligent in discovering the critical facts. *See Bibeau v. Pacific Northwest Research Found.*, 188 F.3d 1105, 1108 (9th Cir. 1999), *amended*, 208 F.3d 831 (9th Cir. 2000). A plaintiff who does not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations if he should have known in the exercise of due diligence. *See id.*

The Court finds that regardless of whether plaintiff knew or should have known about his alleged injury in March 2002 when the Hendersons removed items from the storage unit, plaintiff had actual notice of the alleged search and seizure on November 24, 2003, the date of the preliminary hearing. Absent any tolling, the statute of limitations on this claim expired on November 24, 2005. As explained above, plaintiff is entitled to two years of tolling under Section 352.1(a), and thus the statute starting running on November 25, 2005, and ran until December 13, 2006, when the California Court of Appeal reversed plaintiff's conviction. Plaintiff is entitled to tolling under Section 945.3 from December 13, 2006 through January 15, 2008, and the limitations period starting running again on January 16, 2008. This lawsuit was filed well after the two year limitations period expired. Accordingly, the Court GRANTS defendants' motion to dismiss this claim without leave to amend.

**III.  Defendants Betty and Kenneth Henderson's motion to dismiss and for sanctions**

The Hendersons also move to dismiss the fifth cause of action on the ground that it is time-barred. For all of the reasons stated above, the Court concludes that this claim is untimely, and that leave to amend would be futile. In addition, this claim is even more untimely as to the Hendersons because Section 945.3 tolling only applies to claims "against a peace officer or the public entity employing a peace officer" and does not apply to claims against private individuals such as the Hendersons. As the California Court of Appeal has explained,

15

> [S]ection 945.3 does not apply to civilian defendants. The language of section 945.3 clearly states that "[n]o person ... may bring a civil action ... against a peace officer or the public entity employing a peace officer . . . . " Furthermore, the purpose of the statute as described in the legislative history is "to eliminate the use of civil damage complaints as plea bargain levers" in criminal prosecutions. Obviously, this leads to the inescapable conclusion that the Legislature had in mind only governmental entities as defendants when it drafted section 945.3, because civilian defendants could not be a party in a criminal prosecution nor would they take part in any plea bargaining.

*Damjanovic v. Ambrose*, 3 Cal. App. 4th 503, 510-11 (1992).

The Hendersons also seek sanctions under Rule 11. The Hendersons argue that their counsel repeatedly informed plaintiff's counsel that the claim against the Hendersons was untimely, and provided plaintiff's counsel with authority that demonstrated the claim was time-barred. Plaintiff responds that the sanctions motion is procedurally defective because it was not made separately from the motion to dismiss, and it was not served on plaintiff 21 days before filing the motion. *See* Fed. R. Civ. Proc. 11 (c)(2). Plaintiff also argues against sanctions on substantive grounds.

The Court agrees with plaintiff that the sanctions motion is procedurally defective, and thus DENIES the request for sanctions. However, the Court is compelled to observe that there does not appear to have been any good faith basis for alleging the fifth cause of action against the Hendersons. Plaintiff's assertions that the claim did not accrue until January 2008 are belied by the official record of the criminal proceedings, which demonstrate that plaintiff had actual knowledge of the search as early as November 2003. Particularly in the face of the January 2005 motion for return of his belongings, it is simply incredible to claim an accrual date of January 2008.

///

**CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiff's motion for attorneys' fees and costs. (Docket No. 13). The Court GRANTS in part and DENIES in part the motion to dismiss filed by defendants Cook, Jarboe, Finamore and Horton. (Docket No. 22). The Court GRANTS the Henderson defendants' motion to dismiss. (Docket No. 18). If plaintiff wishes to file an amended complaint amending the fourth cause of action, he must do so no later than **January 8, 2010**.

**IT IS SO ORDERED.**

Dated: December 15, 2009

SUSAN ILLSTON
United States District Judge