IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSEPH PIERRE ROLLIN,

    Plaintiff,

v.

CHRISTINE COOK, *et al.*,

    Defendants.
                                      /

No. C 09-3579 SI

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOURTH CAUSE OF ACTION WITHOUT LEAVE TO AMEND**

Defendants' motion to dismiss the fourth cause of action is scheduled for a hearing on March 12, 2010. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS the motion to dismiss the fourth cause of action without leave to amend. The Court will hold an initial case management conference on **April 2, 2010** at **3:00 pm**.

**BACKGROUND**

On August 5, 2009, plaintiff Joseph Pierre Rollin filed a complaint for damages for violation of his constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff's claims arise out of his arrest and prosecution for abuse of a dependent adult. The first amended complaint alleges that plaintiff was the caregiver for Joi Henderson Wright, a woman diagnosed with multiple sclerosis ("MS"). Plaintiff was also romantically involved with Wright, and they lived together in a mobile home in Orick, California. First Amended Compl. ¶¶ 17-18. According to the complaint, defendant Michael Finamore, a public health nurse employed by the Humboldt County Adult Services, visited Wright in August or

**United States District Court**
For the Northern District of California

September 2000 and found that Wright suffered from advanced MS, that she was bedridden, had bed sores, and needed full time care. *Id*. ¶ 19. The complaint alleges that "[b]ecause Plaintiff was not medically trained and Wright needed more medical services than he could provide, Plaintiff requested of Finamore that the Humboldt County Adult Protective Services (hereinafter 'APS') take over and supervise Wright's care." *Id*. ¶ 20. Defendant Finamore arranged for Wright to receive county health services from APS and then arranged for the county to contract with plaintiff as Wright's designated caregiver for certain designated times. *Id*. ¶ 21. The complaint alleges that the balance of the time there was no designated caregiver and "Plaintiff did the best he could under the extenuating circumstances." *Id*.

In November 2000, plaintiff informed Finamore that he could no longer care for Wright and that Finamore should find another caregiver. *Id*. ¶ 22. Finamore arranged for Wright to be moved to Eureka, California, and to receive in-house support services from the county. *Id*. ¶ 23. In March 2001, Wright insisted and demanded that she be moved back to Orick and that plaintiff be reinstated as her caregiver. *Id*. ¶ 24. Despite objections from Finamore, plaintiff, and Wright's doctors, Wright was moved back to the mobile home in Orick and plaintiff was again contracted to be her caregiver. *Id*. The complaint alleges that "Wright was given what she wanted and demanded." *Id*. In October 2001, APS terminated all services to Wright based on the recommendation of Finamore. *Id*. ¶ 25. According to the complaint, Finamore's recommendation was based on his observations that Wright refused medical services, refused prescription drugs, and refused to be moved into a medical care facility. *Id*.

The complaint alleges that on or about March 14, 2002, plaintiff and Wright decided to relocate to San Diego, California because of threats on plaintiff's life. *Id*. ¶ 31. On or about March 18, 2002, plaintiff traveled to San Diego. *Id*. ¶ 32. Plaintiff left his brother, Andre Rollin, to care for Wright. *Id*. According to the complaint, Wright died in her sleep sometime in the late afternoon or early evening of March 19, 2002. *Id*. ¶ 33. Shortly after midnight, Andre Rollin brought Wright's body to the Mad River Community Hospital where Wright was declared dead on arrival. *Id*. ¶ 34. The death certificate stated that the cause of death was "Lobar Pneumonia, contaminated pressure sores, bedridden and MS." *Id*. ¶ 35. The death certificate also noted that Wright had a urinary tract infection and advanced malnutrition. *Id*.

Sometime shortly after Wright's death, plaintiff relocated to Texas. *Id.* ¶ 42. On or about April 8, 2003, plaintiff was contacted by defendant Cook, who was investigating Wright's death for the Humboldt County Sheriff's Department and/or the Humboldt County District Attorney's Office. *Id.* ¶ 43. Cook arranged for Texas law enforcement officers to arrest plaintiff and take him into custody. *Id.* Cook interrogated plaintiff for approximately one half hour as to the circumstances of Wright's death without advising him of his Fifth Amendment rights. *Id.* ¶ 44. After Cook concluded the initial interrogation, and plaintiff gave his initial statements, Cook left the room. *Id.* ¶ 45. Cook subsequently returned, took plaintiff into a different room that was "wired," and advised plaintiff of his Fifth Amendment rights. *Id.* The complaint alleges that Cook then reinstituted a lengthy six-plus hour coercive interrogation during which plaintiff answered Cook's questions; some of plaintiff's answers differed from his previous answers. *Id.*

Plaintiff was charged and ultimately convicted of abuse of an elder or dependent adult in violation of California Penal Code Section 368(b)(1). The complaint alleges that at the preliminary hearing and at trial, Cook testified that plaintiff's answers that were given before the *Miranda* warning were actually given after the *Miranda* warning. *Id.* ¶ 46. Plaintiff appealed his conviction, and on December 13, 2006, the California Court of Appeal reversed plaintiff's conviction and held that "a statement obtained in violation of the rule announced in *Miranda v. Arizona* (1966) 384 U.S. 436 was admitted at trial as evidence of his guilt, and the error was not harmless beyond a reasonable doubt." Docket No. 38, Ex. I at 1. Upon a retrial of plaintiff, a jury found plaintiff not guilty of any charges. *Id.* ¶ 49. Plaintiff was in custody continuously from April 8, 2003 until January 15, 2008. *Id.* ¶ 50.

The initial complaint alleged five claims under 42 U.S.C. § 1983 for violations of plaintiff's constitutional rights. In an order filed December 15, 2009, the Court granted in part and denied in part defendants' motions to dismiss, and granted plaintiff leave to amend the fourth cause of action. The fourth cause of action alleges that defendants Cook, Jarboe, Finamore and Horton conspired to violate plaintiff's Fourth, Fifth and Fourteenth Amendment rights by preparing false reports and affidavits in support of plaintiff's arrest warrant. Defendants Jarboe and Horton are peace officers who were involved in plaintiff's criminal case. The Court's December 15, 2009 order held that plaintiff' claim appeared to be untimely because it accrued on May 15, 2003, the date when plaintiff was arraigned and

3

bound for trial. *See Wallace v. Kato*, 549 U.S. 384, 391-92 (2007). Plaintiff asserted that the claim was not untimely because the conspiracy continued into plaintiff's retrial in 2008. The Court granted plaintiff leave to amend to "explain how these defendants – who prepared the reports and affidavits at issue but did not prosecute plaintiff at the retrial – would be liable for the use of the reports at the retrial." Order at 11:16-19.

Plaintiff amended the fourth cause of action. The amended complaint alleges that "Defendant Cook conspired with Defendants Jarboe, Horton and Finamore to prepare, draft and file false affidavits and false reports that they knew or should have known did not reflect Wright's health, living conditions, and the intentions of Wright to determine her own future." *Id.* ¶ 61. The complaint alleges that "[t]hese false reports formed the basis on which the false affidavit of probable cause was filed when Plaintiff was arrested." *Id.* The complaint alleges that the four defendants "used those affidavits and reports as a basis for their testimony in the preliminary hearing and both the first and second trials," and that "the last overt act in the conspiracy took place when Defendants/co-conspirators corroborated and conspired to use the information in the false affidavits and false reports in their testimony during the second trial which ended January 15, 2008." *Id.* ¶ 62. The complaint alleges that the last overt act of the conspiracy was not the filing of the affidavits and reports "because the agreement itself aimed beyond merely arresting Plaintiff; it encompassed the process of time and the ultimate conviction of Plaintiff of the charges filed against him." *Id.*

Defendants Cook, Finamore, Jarboe and Horton have moved to dismiss the amended fourth cause of action.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

4

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). While courts do not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

Defendants contend that the amended conspiracy claim is barred for several reasons. First, to the extent that the claim is based on defendants' alleged conspiracy to prepare, draft, and file false reports and affidavits resulting in plaintiff's arrest, that cause of action accrued on May 19, 2003, and is untimely. Second, to the extent that the claim is based on an alleged conspiracy to use the false reports and affidavits to provide false testimony at the preliminary hearing, trial, and retrial, those claims are barred by defendants' absolute immunity in providing trial testimony. Plaintiff responds that whether viewed as one conspiracy (which is what plaintiff alleges), or several conspiracies, the claims are timely because they were tolled and/or because the conspiracy continued until January 2008 when defendants allegedly provided false testimony at the retrial.

"The Ninth Circuit determines the accrual of civil conspiracies for limitations purposes in accordance with the last overt act doctrine." *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir.

5

1986). "Under this doctrine, injury and damage in a civil conspiracy action flow from the overt acts, not from the mere continuance of a conspiracy." *Id*. Thus, the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff, and plaintiff may only recover for the overt acts that are alleged to have occurred within the limitations period. *Id*.

With respect to the overt act of preparing false reports and affidavits that led to plaintiff's arrest, that claim accrued on May 19, 2003. *See Wallace*, 549 U.S. at 391-92. The claim is subject to a two year statute of limitations, and thus absent tolling, the limitations period expired on May 19, 2005. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). The Court incorporates by reference the analysis in the December 15, 2009 order explaining how tolling under California Government Code Section 945.3 and California Code of Civil Procedure Section 352 applies to plaintiff's claim. *See* Order at 8:20-11:5. Plaintiff's claim accrued on May 19, 2003, and the limitations period was tolled under Sections 945.3 and 352.1 from May 19, 2003 until May 19, 2005. The limitations period began to run on May 20, 2005, and continued to run until December 13, 2006, when the California Court of Appeal reversed plaintiff's conviction. Beginning on December 13, 2006, the limitations period was tolled under Section 945.3 because the criminal charges were "pending" from the date of the reversal through plaintiff's retrial and acquittal on January 15, 2008. The limitations period began to run again on January 16, 2008, and expired before the filing of this lawsuit on August 5, 2009.

The remaining overt acts are the defendants' use of the allegedly false reports and affidavits in providing false testimony at the preliminary hearing, trial and retrial. However, a witness has absolute immunity from liability for civil damages under § 1983 for allegedly giving perjured testimony at trial, and for allegedly conspiring with others to present perjured testimony at trial. *Franklin v. Terr*, 201 F.3d 1098, 1100 (9th Cir. 2000). As the Ninth Circuit explained,

> We are persuaded that allowing a plaintiff to circumvent the *Briscoe* rule by alleging a conspiracy to present false testimony would undermine the purposes served by granting witnesses absolute immunity from damages liability under § 1983. Absolute witness immunity is based on the policy of protecting the judicial process and is necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation. As the Court stated in *Briscoe*, "[a] witness's apprehension of subsequent damages liability might induce two forms of self censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability." *See Briscoe*, 460 U.S. at 333, 103 S.Ct. 1108 (internal citations omitted). Moreover, as the district court correctly observed, "[a]ny other holding would eviscerate absolute

immunity since a witness rarely prepares her testimony on her own." *Franklin*, 1998 WL 230983, at *1.

*Franklin*, 201 F.3d at 1101-02 (internal citations and quotations omitted).

Accordingly, because plaintiff's fourth cause of action is partially untimely and partially barred as a matter of law, the claim is DISMISSED without leave to amend.[1]

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss the fourth cause of action without leave to amend. (Docket No. 48).

**IT IS SO ORDERED.**

Dated: March 8, 2010

SUSAN ILLSTON
United States District Judge

---

[1] Plaintiff's opposition also asserts that the fourth cause of action challenges a conspiracy involving other defendants regarding the alleged theft of plaintiff's property from the storage locker. However, in the December 15, 2009 order, the Court dismissed the claims related to the alleged theft as untimely.

7