IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH PIERRE ROLLIN, | No. C 09-3579 SI |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT COOK'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CHRISTINE COOK, *et al.*, | |
| Defendants. | |

On July 2, 2010, the Court held a hearing on the parties' cross-motions for summary judgment. The parties submitted supplemental briefs after the hearing. For the reasons set forth below, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendant Cook's motion for summary judgment.

**BACKGROUND**

On August 5, 2009, plaintiff Joseph Pierre Rollin filed a complaint for damages for violation of his constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988. As a result of several orders ruling on defendants' motions to dismiss, the sole remaining claim is for violation of plaintiff's Fifth Amendment rights against defendant Christine Cook.

Plaintiff's claim arises out of his arrest and prosecution for abuse of a dependent adult, Joi Henderson Wright. Ms. Wright suffered from multiple sclerosis, and she lived with plaintiff in a mobile home in Orick, California. According to the decision of the California Court of Appeal in plaintiff's criminal case, on March 20, 2002, plaintiff's brother brought Wright's emaciated and soiled body to the

hospital. *People v. Joseph Pierre Rollin*, No. A107997 at 2 (Cal. Ct. App. Dec. 13, 2006) (Plaintiff's Supplemental Request for Judicial Notice, Ex. 1 at 2). Wright had been dead for hours, her catheter had not been changed for an extended period of time, and the most serious of numerous bedsores extended to the bone. *Id*. at 2-3. The primary cause of death was determined to be bronchial pneumonia, caused by fecal contamination of her bedsores or by a urinary tract infection. *Id*. at 3. Wright was malnourished, possibly because of a lack of food or due to her multiple sclerosis. *Id*.

A criminal complaint was filed against Rollin on March 19, 2003. *Id*. On April 8, 2003, Rollin was arrested in Austin, Texas. *Id*. Defendant Christine Cook, a senior investigator for the Humboldt County District Attorney's Office, went to Texas to interview Rollin about Wright's death. On April 10, 2003, after spending several days in custody, Rollin was transported in handcuffs from the county jail to an interview room at a police station. *Id*. at 4-5. Cook and another officer, Gilbert Cardenes, transported Rollin. Reporter's Transcript at 799:15-17 (Defendant's Request for Judicial Notice, Ex. A). The interview was videotaped without Rollin's knowledge. When the interview began, Cook introduced herself to Rollin and stated that she was in Texas to talk to him about Wright's death. Cook stated,

> Well, Pierre, my name is Chris Cook. I'm from Humboldt County, from Eureka. I'm here to try – find out what happened to Jo[i], how she died. And I was really interested in what you were talking to the officer, Cardinyas (phonetic), about. I didn't know that possibly she died from choking. And –

Cook Decl. Ex. A (transcript of interview). Rollin then interrupted Cook, told Cook that it was correct that Wright had died from choking, and began speaking for approximately 20 minutes about his relationship with Wright and the circumstances of her death. Rollin said, *inter alia*, that Wright and his brother were in a motel room at the time of Wright's death, and that Wright was sleeping and choked to death. *Id*. at 6:26-7:5. At no point before Rollin began speaking, or during the 20 minute "monologue," did Cook give Rollin a *Miranda* warning.[1] Approximately 20 minutes into the interview, an officer interrupted the interview to see if Rollin wanted more coffee. Cook left the interview room, returned, and after a further exchange with Rollin, gave him a *Miranda* warning.

---

[1] The transcript of the interview is attached as Exhibit B to the Cook declaration. In addition, the parties have submitted a DVD of the interview.

2

After receiving the *Miranda* warning, Rollin continued to talk and deny he was with Wright when she died. After a break, Cook told Rollin that his brother was in custody and had told a different story. When he was accused of not telling the truth, Rollin invoked his rights and asked for an attorney, and the interview ended. However, Rollin kept talking while Cook accompanied him back to the county jail. *People v. Rollin*, at 3. Cook told him that she could not talk to him after he invoked his rights. *Id*. Cook obtained a second waiver and made an audiotape recording of Rollin's remaining statements. *Id*. Rollin ultimately admitted that he was present when Wright died, and that Wright choked and died in her sleep. *Id*. at 3 & 5 n.5.

Rollin was charged with and ultimately convicted of abuse of an elder or dependent adult in violation of California Penal Code Section 368(b)(1). At the preliminary hearing, Cook testified as to plaintiff's pre- and post-*Miranda* warning statements. At trial, the state trial judge conducted an evidentiary hearing regarding the admissibility of Rollin's statements. The judge ruled that the interview, including Rollin's pre-*Miranda* statements, should be played in their entirety for the jury:

> Essentially, all that Investigator Cook did at the outset of the interview at the Austin Police Department was identify herself, state that she was there to learn or ascertain what happened to Joi Wright, and as previously indicated, then Mr. Rollin proceeded with a narrative statement. I do not find that that was an interrogation.

Reporter's Transcript at 812:26-814:3 (Defendant's Request for Judicial Notice Ex. A).

Plaintiff appealed his conviction, and on December 13, 2006, the California Court of Appeal reversed plaintiff's conviction and held that Rollin's Fifth Amendment right against self-incrimination was violated when he was interviewed by Cook. The Court held,

> "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 300-302, fns. omitted).
>
> It is undisputed that defendant was in custody when he spoke with Cook in Texas. He was transported in handcuffs from the county jail to an interview room at a police station. When the interview began at the police station, Cook identified herself, and told defendant she was there "to talk to him about Joi" and to "find out what happened to Jo[i]— how she died." Cook then told defendant she was interested in an earlier comment defendant made to a police officer during the trip from the jail that she understood to imply that Joi died from choking. Defendant told Cook that was correct,

3

> and proceeded to talk for approximately 20 minutes about his relationship with Joi and the circumstances of her death. When an officer interrupted the interview to see if defendant wanted more coffee, Cook left the room and advised defendant of his rights when she returned. During defendant's 20 minute monologue, Cook repeatedly nodded her head, made affirmative sounds in response to defendant's statements, and occasionally took notes. From defendant's perspective, Cook's conduct must reasonably be viewed as likely to elicit an incriminating response and is the functional equivalent of express questioning.
>
> . . .
>
> Cook should have known that her words and conduct were "reasonably likely to elicit an incriminating response" from defendant. (See *Rhode Island v. Innis*, *supra*, 446 U.S. at ¶. 301-302.) She told defendant she was in Texas to interview him and get information from him about Wright's death. She accompanied him from the county jail to an interview room at a police station equipped with recording devices. She expressed a specific interest in defendant's earlier comment that Joi choked to death, effectively inviting him to respond and thereby increasing the likelihood that he would incriminate himself by speaking about her death.
>
> The Attorney General now argues that Cook was waiting for him to "'come up for air'" to read him his rights, but our review of the videotape of the interview indicates Cook never attempted to interject until defendant had spoken for about 20 minutes. Cook had 15 years of experience as an investigator, 25 years as a peace officer, and had attended "many years of training regarding interviewing and interrogation techniques." The fact that she did not ask defendant explicit questions does not end our inquiry regarding whether there has been a *Miranda* violation. (See *Rhode Island v. Innis*, *supra*, 446 U.S. at p. 299, fn. 3 ["To limit the ambit of *Miranda* to express questioning would 'place a premium on the ingenuity of the policy to devise methods of indirect interrogation, rather than to implement the plain mandate of *Miranda*.'"]). Cook should have known that her comments were likely to draw damaging statements from defendant, and should have given him *Miranda* warnings at the beginning of the interview. (See *People v. Harris*, *supra*, 211 Cal.App.3d at ¶. 648-649; see also *Rhode Island v. Innis*, *supra*, at p. 302.)

*People v. Rollin*, at 4-7.

Upon a retrial of plaintiff, a jury found him not guilty of any charges. Compl. ¶ 47. Rollin's post-*Miranda* statements were admitted at the second trial.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its

4

initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

The parties have both moved for summary judgment on the issue of Cook's liability. Rollin argues that the California Court of Appeal has already held that Cook violated his Fifth Amendment rights, and that Cook is not entitled to qualified immunity because *Miranda v. Arizona* and *Rhode Island v. Innis* were clearly established law at the time of the 2003 interview. *Miranda* requires that a person subjected to custodial interrogation be advised that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Supreme Court in *Rhode Island v. Innis*, 446 U.S. 291 (1980), held that "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. Rollin contends that there is no dispute that he was in custody, and that it should have been clear to Cook that she was required to provide *Miranda* warnings because Cook's words and comments were

reasonably likely to elicit an incriminating response from Rollin.

Cook contends that she did not violate plaintiff's Fifth Amendment rights, and that even if she did, she is entitled to qualified immunity because under the situation presented it would not have been clear to a reasonable police officer that his or her conduct was illegal. Cook does not dispute that Rollin was in custody at the time of the interview. Instead, Cook contends that under the circumstances it was not clearly established that she was required to provide *Miranda* warnings because her statements to Rollin were introductory, she did not ask an express question, and because Rollin interrupted her and began a twenty minute "monologue."

Cook may be entitled to qualified immunity if her conduct "'[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted. *Id.* at 818 (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier v. Katz*, 533 U.S. 194 (2001)). The Court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id.* (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory). A ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier*, 533 U.S. at 200. Qualified immunity is particularly amenable to summary judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted. *Id.* It is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly established. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Rather, "the contours of the right must

6

be sufficiently clear so that a reasonable official would know that his conduct violates that right." *Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995). The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). The defendant bears the burden of establishing that her actions were reasonable, even if she violated the plaintiff's constitutional rights. *Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995).

The Court concludes that even assuming that Cook violated plaintiff's Fifth Amendment rights, Cook has met her burden to show that it would not have been clear to a reasonable police officer that her conduct was illegal in the situation she confronted. Courts have held that words or actions "normally attendant to arrest and custody" do not constitute interrogation, and similarly that informing a defendant of the charges or evidence against him do not constitute interrogation because those statements do not call for or elicit an incriminating response. *See United States v. Crisco*, 725 F.2d 1228, 1232 (9th Cir. 1984) ("[W]hen an officer informs a defendant of circumstances which contribute to an intelligent exercise of his judgment, this information may be considered normally attendant to arrest and custody"; no functional equivalent of interrogation when officer went into room to advise the defendant that he was under arrest and to explain the charges, the defendant said that he did not understand the charges and protested that he had not done anything, the undercover DEA agent then said, "Hey, you met with me – for the purpose of seeing $60,000 that I was going to use to buy a kilo of cocaine," and the defendant replied, "Well, I admit that.").

For example, in *Shedelbower v. Estelle*, 885 F.2d 570 (9th Cir. 1989), *cert. denied*, 498 U.S. 1092 (1991)), officers went to a suspect's home and brought him in handcuffs to the local police station for questioning. Officers gave the suspect *Miranda* warnings, which the suspect stated he understood, and then the officers questioned him for approximately 45 minutes. The suspect then invoked his right to counsel, at which point the officers told the suspect he was under arrest and informed him that he could either call a private attorney or wait until the following morning when a public defender would be appointed. The officers then began gathering their materials in preparation to leave when one of the officers turned to the suspect and told him that his accomplice was in custody and that the victim had

7

identified the suspect; the latter statement was untrue. The suspect then told the officers that "he had to tell us" and "he wanted to talk about the case and he did not need any attorney present." *Id*. at 572. After a break, officers re-advised the suspect of his *Miranda* rights, and the suspect made a full confession. On appeal, the defendant contended that after he had invoked his constitutional right to counsel, the officers continued interrogation in violation of *Miranda*, and that the "calculated falsehood" about the victim identifying the suspect was designed to elicit an incriminating response. The government contended, *inter alia*, that the officer's statements about the accomplice being in custody and the victim identification did not constitute "interrogation." The Ninth Circuit agreed with the government, holding "[t]he officer's statements were not the functional equivalent of questioning. They did not call for nor elicit an incriminating response. They were not the type of comments that would encourage Shedelbower to make some spontaneous incriminating remark." *Id*. at 573.

Similarly, in *United States v. Moreno-Flores*, 33 F.3d 1164 (9th Cir. 1994), the Ninth Circuit held that post-arrest statements to a suspect that agents had seized approximately 600 pounds of cocaine, that the suspect was in trouble, and that the agent wanted to obtain information from the suspect after the suspect had the opportunity to talk to his attorney did not constitute the functional equivalent of interrogation because they "did not invite a response from Moreno-Flores." *Id*. at 1169. "The fact that they may have struck a responsive chord, or even that they may have constituted 'subtle compulsion' is insufficient to find that they were the functional equivalent of interrogation." *Id*. at 1169-70. The Ninth Circuit also held that the agent's statements "are also properly characterized as statements normally attendant to arrest and custody because they informed Moreno-Flores of the circumstances of his arrest and contributed to an intelligent exercise of his judgment." *Id*. at 1169.

Other circuit courts have reached similar conclusions. In *United States v. Head*, 407 F.3d 925 (8th Cir. 2005), a defendant was arrested on tribal charges and held at the tribal police department. He was then questioned by an F.B.I. agent, who told the defendant that he wanted to "talk to him about what had occurred that morning." *Id*. at 927. In response, the defendant stated that he did not know why he was in custody, and made an incriminating statement. The Eighth Circuit held that the agent's statement was not the functional equivalent of interrogation because the agent "had no reason to know" that his statement would elicit an incriminating response. *Id*. at 928.

Here, Cook's statements to Rollin are similar to the officers' statements in *Crisco*, *Shedelbower*, *Moreno-Flores*, and *Head*. As in those cases, Cook's statements were not express questions, and her statement that she wanted to talk to Rollin to find out how Wright had died is comparable to an officer informing a suspect of the nature of the charges and evidence against him, and is similar to the agent in *Head* telling the suspect that he wanted to "talk to him about what had occurred that morning." In addition, just as the courts in *Crisco*, *Shedelbower*, *Moreno-Flores*, and *Head* held that the officers "had no reason to know" that their statements would elicit an incriminating response, here Cook had no reason to know that Rollin would interrupt her and begin a long "monologue."

At oral argument, both parties framed the question as whether the law was clearly established that Cook had a duty to interrupt Rollin and advise him of his *Miranda* rights. Defendant argued that *Crisco* and *Head* hold that an officer has no duty to interrupt a suspect in order to provide *Miranda* warnings, while plaintiff argued, without citation to authority, that it was clearly established that an officer has such a duty. *Crisco* and *Head* and the other cases discussed *supra* do not analyze the issue in precisely those terms, and instead focus on whether the officer's statements were reasonably likely to elicit an incriminating response and thus constituted the functional equivalent of interrogation. While, in hindsight, Cook should have advised Rollin of his *Miranda* rights at the outset and/or interrupted Rollin and advised him of his *Miranda* warnings, in light of the cases discussed *supra*, the Court cannot conclude that it is clear that a reasonable police officer in Cook's position would have known that her conduct was unlawful.

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendant Cook's motion for summary judgment. (Docket Nos. 58 and 59). The Court GRANTS the parties' requests for judicial notice.

**IT IS SO ORDERED.**

Dated: July 14, 2010

SUSAN ILLSTON
United States District Judge